Sidney Allen WORTHEN,
Petitioner–Appellant,

v.

Larry R. MEACHUM, Director; Attorney General of the State of Oklahoma, Respondents–Appellees.

No. 86–1844.

United States Court of Appeals,
Tenth Circuit.

March 21, 1988.

**1180**

Michael Gassaway of Hughes & Nelson, Oklahoma City, Okl., for petitioner-appellant.

Before McKAY and SEYMOUR, Circuit Judges, and SAM,* District Judge.

SEYMOUR, Circuit Judge.

Sidney Allen Worthen brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982), alleging, inter alia, that his guilty plea in an Oklahoma state court to first-degree murder was involuntary. The federal district court held that Worthen could not challenge his guilty plea because he had not shown cause and prejudice after his failure to raise the issue properly in state court.[1] On appeal Worth-

---

* The Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

1. Worthen asserted numerous other claims below alleging constitutional violations that had occurred prior to his guilty plea. *See* appendix attached hereto. The district court held that,

en renews his contentions that his plea was involuntary, and that habeas relief is not barred by his procedural default. We affirm.[2]

## I. PROCEDURAL DEFAULT

Under Oklahoma law, a defendant may not appeal from a conviction on a guilty plea if he does not apply to withdraw the plea within ten days of the judgment and sentence. *See* Okla.Stat. tit. 22, § 1051 (1981); Okla.R.Crim.App. 4.1. The transcript of the plea proceeding in this case reveals that Worthen, who was represented by retained counsel, was told that he had the right to ask the court to withdraw his guilty plea within ten days. He responded that he understood. He also stated that he wanted to waive the waiting period, and be sentenced and transported to prison immediately. He did not apply to withdraw his plea within ten days and did not attempt to pursue a timely direct appeal.[3]

■ In May 1985, Worthen filed an application for state post-conviction relief, asserting, in addition to numerous other claims, that his guilty plea was involuntary. Under Oklahoma law, post-conviction relief is not available to a defendant who has not perfected a timely direct appeal unless he articulates special circumstances showing "sufficient reason" for his failure. Okla. Stat. tit. 22, § 1086 (1981); *see also Maines v. State*, 597 P.2d 774, 776 (Okla.Crim.App. 1979). The state courts here held that Worthen had failed to make the required showing and refused to consider the voluntariness of his plea on the merits. After reviewing the above procedural history, the federal district court held that Worthen could not obtain federal habeas review of his guilty plea unless he satisfied the cause and prejudice requirement set out in *Wain-*

*wright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In so doing, the court used the wrong legal standard.

In *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Supreme Court held that a defendant who had not taken a direct appeal of his state conviction was barred from obtaining federal review only if his decision was a deliberate by-pass of orderly state procedure. Although subsequent Supreme Court cases have held that the more demanding *Wainwright* cause and prejudice standard applies when a defendant perfects a state appeal but does not raise the issue he later asserts in federal court, *see Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986); *Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984), the appropriate test to apply when a petitioner has taken *no* direct state appeal remains the deliberate bypass inquiry of *Fay*, *Holcomb v. Murphy*, 701 F.2d 1307, 1310 (10th Cir.) ("[The Supreme Court] has not overruled *Fay*, and until it does we shall apply the rule of that case at least to situations in which no state appeal has been taken."), *cert. denied*, 463 U.S. 1211, 103 S.Ct. 3546, 77 L.Ed.2d 1394 (1983). *See Murray*, 106 S.Ct. at 2648 (expressing no opinion when defendant fails to appeal); *Wainwright*, 433 U.S. at 88 n. 12, 97 S.Ct. at 2507 n. 12 (same).

■ Although the district court assessed Worthen's procedural default under inappropriate criteria, a remand is not necessary under the circumstances of this case. In evaluating Worthen's showing of cause and prejudice, the court concluded that even if Worthen had established sufficient cause for his failure to appeal, he had not demonstrated actual prejudice because he

---

under *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), Worthen could not raise these independent pre-plea claims. Worthen does not cite this ruling as error on appeal.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is

therefore ordered submitted without oral argument.

3. Worthen wrote the state court judge a pro se letter filed September 20, 1982, three weeks after his guilty plea, in which he requested a new trial. This request was denied. In March 1985, Worthen filed a motion to withdraw his guilty plea and proceed to trial, which was also denied.

had not shown that his guilty plea had been given involuntarily. Thus, even if Worthen were, to prevail after the district court redetermined the availability of federal habeas relief under the less stringent standard of *Fay*, Worthen would receive on remand no more than the review the district court has already provided—an evaluation of the constitutional validity of his guilty plea. We will therefore consider whether the district court's ruling on this issue was correct.

## II. THE GUILTY PLEA

Worthen and a co-defendant were charged with first-degree murder in the death of Worthen's wife, who was found in her home with her throat slit. At the preliminary hearing, the State relied on a signed statement that Worthen had given to investigating authorities. Worthen admitted in the statement that he and a cohort had planned the murder to obtain the insurance proceeds under a life insurance policy Worthen had recently obtained on his wife. He said that his cohort actually did the killing.

Pursuant to Oklahoma law, the State indicated its intent to seek the death penalty for Worthen by filing a Bill of Particulars setting out the evidence of aggravating circumstances upon which it would rely. *See* Okla.Stat. tit. 21, § 701.10 (1981); *Ross v. State*, 717 P.2d 117, 122–23 (Okla.Crim. App.1986). The record of the guilty plea proceedings reveals that Worthen agreed to plead guilty to first degree murder upon the advice of his attorney in exchange for the State's agreement to withdraw the Bill of Particulars. The plea bargain thus eliminated the possibility that Worthen could be sentenced to death. Instead, he was sentenced to life in prison.

On appeal, Worthen asserts that his plea was involuntary, and therefore constitutionally invalid, because: 1) he was not advised at the plea proceeding of the range of punishment for the offense; 2) he was likewise not advised of the acts sufficient to constitute the offense for which he was charged; and 3) he entered the plea in reliance upon misrepresentations made by his attorney. He does not challenge the district court's failure to hold an evidentiary hearing, nor does he assert that further factual development is necessary to resolve the issues he pursues on appeal.

### A.

 A plea is not voluntary unless the defendant knows the direct consequences of his decision, including the maximum penalty to which he will be exposed. *See, e.g., Quiroz v. Wawrzaszek*, 749 F.2d 1375, 1378 (9th Cir.1984), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2119, 85 L.Ed.2d 483 (1985); *Rouse v. Foster*, 672 F.2d 649, 651 (8th Cir.1982); *Cheely v. United States*, 535 F.2d 934, 935 (5th Cir.1976). While Worthen is correct in asserting that he was not informed of the maximum sentence on the record of the plea colloquy, we do not agree that a silent record is always dispositive. The critical inquiry is whether Worthen actually knew of the maximum possible sentence. *See, e.g., Nelson v. Callahan*, 721 F.2d 397, 400 (1st Cir.1983); *Rouse*, 672 F.2d at 651; *Hunter v. Fogg*, 616 F.2d 55, 58 (2d Cir.1980). *But see Yellowwolf v. Morris*, 536 F.2d 813 (9th Cir.1976) (requiring that trial judge advise the defendant on the record of the maximum penalty).

Under Oklahoma law at the time Worthen pled guilty to first-degree murder, he could have received only two possible sentences, death or life in prison. *See*, Okla. Stat. tit. 21, § 701.9, subd. A (1981). The record reflects that Worthen agreed to plead only after extensive discussion with his attorney, an experienced criminal lawyer. *See Berry v. Mintzes*, 726 F.2d 1142, 1149 (6th Cir.), *cert. denied*, 467 U.S. 1245, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984). Moreover, Worthen expressed no surprise or objection when the court imposed a life sentence. *See id.; Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir.1981). Worthen has never alleged he did not *know* that life imprisonment was the only sentence he could receive after the State agreed not to seek the death penalty. Under these circumstances, we cannot hold his plea unknowing or involuntary simply because the

court did not, as it should have, specifically inform him at his plea hearing of the maximum sentence.

### B.

■ Worthen contends that his plea was not knowing and voluntary because he was not advised on the record of the acts sufficient to constitute the offense. He does not allege what he did not understand about the charge against him. We assume he is contending that the record lacks an explanation of the nature or elements of the crime. *See Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

Worthen was at the preliminary hearing where the details of the murder were described by the investigating officer. The transcript of the plea colloquy reveals that Worthen's attorney stated on the record, after referring to the information filed against Worthen, that Worthen was charged with effecting the death of his wife to recover insurance proceeds. Thereupon, in response to a question from the judge, Worthen affirmed that he was pleading guilty because he was guilty of the offense as described.

> "It is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

*Marshall v. Lonberger*, 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) (citations omitted); *Henderson*, 426 U.S. at 645 & n. 13, 96 S.Ct. at 2257 & n. 13 (1976)). Thus, in order for a guilty plea to be "voluntary in a constitutional sense," a defendant must not merely understand the rights he waives, but he must also have a competent understanding of the charge against him. *Id.* The Supreme Court has clearly indicated, however, that a defendant of sufficient "intelligence and experience in the criminal justice system" may, in some circumstances, be presumed to have under-

stood the nature of the charge even though a specific explanation is not shown on the plea record. *See Marshall*, 459 U.S. at 436–37, 103 S.Ct. at 851–52; *Henderson*, 426 U.S. at 647, 96 S.Ct. at 2258.

Courts have made this presumption when a defendant of normal intelligence is read an information that is clear and not complex, *see United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); when the defendant has discussed the plea with an experienced criminal lawyer, *see Berry*, 726 F.2d at 1147, and when the defendant has offered no evidence to rebut the presumption that his attorney has explained the nature of the offense to him, *see Gregory v. Solem*, 774 F.2d 309, 316 (8th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986). Those factors are all present here. Worthen even answered affirmatively when asked at his plea hearing if he had been charged with first degree murder. Moreover, Worthen never alleges what element of this crime he did not understand. *Cf. Henderson*, 426 U.S. at 647, 96 S.Ct. at 2258 (trial judge found element of intent not explained to respondent who pled guilty to second degree murder). Accordingly, we presume that Worthen received actual notice of the nature of the charge to which he pled sufficient to allow him to form an intelligent decision to plead guilty.

### C.

Worthen also argues that his plea was involuntary because it was given in reliance on misrepresentations made to him by his attorney. Specifically, Worthen claims he relied on representations that he would be paroled in five or six years, that he would be given immunity from prosecution on other charges, and that his attorney would represent him in other legal and financial matters.

■ Worthen repeatedly stated on the record that he had not been coerced, threatened, or promised anything by his attorney or anyone else. Although such record responses are subject to challenge under appropriate circumstances, they "constitute a

1184

formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *Little v. Allsbrook*, 731 F.2d 238, 239 n. 2 (4th Cir.1984); *Johnson*, 653 F.2d at 752. In *Blackledge*, the petitioner alleged that his attorney told him the prosecution and the court had promised if he pled guilty he would receive a ten year sentence. *Id.* 431 U.S. at 69, 97 S.Ct. at 1626. He pled and was sentenced to seventeen to twenty-one years. In holding that summary dismissal was inappropriate, the court looked closely at both the petitioner's allegations and the circumstances in which he pled guilty. *See id.* at 76, 97 S.Ct. at 1630. When we examine the present case under the standards utilized in *Blackledge*, we conclude that the broken promises Worthen alleges are insufficient to undermine the voluntariness of his plea.

▮▮▮▮ A defendant's expectation of parole that is based on a bad guess by his attorney does not render a plea involuntary. *See Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Little v. Allsbrook*, 731 F.2d at 241; *cf. Wellnitz v. Page*, 420 F.2d 935, 936–37 (10th Cir.1970) (same for inaccurate prediction of sentence). When an involuntariness claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective. *Hill*, 106 S.Ct. at 369. Here, Worthen was told on the record that neither his attorney nor the court had any authority over the Pardon and Parole Board. He does not suggest any reason why he would have chosen to face the death penalty had his attorney correctly informed him of his parole eligibility; nor does he allege that he would have withheld his guilty plea had he known the true parole possibilities. *Cf. Hill*, 106 S.Ct. at 371. Under these circumstances, even if Worthen's attorney's alleged mistaken advice about parole rendered his performance inferior to that reasonably expected of attorneys in these circumstances, Worthen was not prejudiced by advice that the court specifically told him was incorrect.

▮▮▮▮ The alleged promise of immunity presents an additional consideration. When a plea rests on a promise of the prosecutor, that promise must be fulfilled regardless of the role it played in the defendant's decision to plead. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Although Worthen speaks in terms of promises made by his attorney, we assume he means that his attorney was merely relaying this alleged promise from the prosecutor. If such a promise had been made and broken, the interests of justice would demand that Worthen be entitled to some relief (e.g., either specific performance of the promise or an opportunity to withdraw his plea). *Id.* Worthen, however, has not alleged that he has been subjected to additional prosecution. Nor has he presented any other evidence suggesting that he is likely to be subject to future prosecution. In the absence of an allegation that the alleged promise has been broken, Worthen is not entitled to relief.

Worthen also alleges that his attorney promised him representation in various civil and financial matters. However, the plea transcript reveals the following exchange between the prosecutor and Worthen:

"Q. Other than the agreement by the State to dismiss the Bill of Particulars in this case, have any other promises been made to you, to get you to plead guilty?

"A. No, ma'am."

Tr. August 30, 1982, at 5. Subsequently, Worthen's attorney questioned him. After stating that his decision to plead guilty was influenced by the State's agreement to withdraw its request for the death penalty, Worthen testified as follows:

"Q. And that this is a free and voluntary plea on your part?

"A. Yes, it is.

"Q. And that it is not the result of any threat or coercion or any type of argument from me, to try to convince you to do this?

"A. That's true."

*Id.* at 9–10. The Court in *Blackledge* held that

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."

431 U.S. at 74, 97 S.Ct. at 1629.

 The promise of legal help allegedly made by Worthen's defense attorney was totally distinct from and unrelated to the material substance of the plea bargain. It is not the type of promise suggestive of coercion that would render a guilty plea involuntary. Significantly, Worthen does not allege that his attorney's promise to represent him in other matters in any way overbore his will or otherwise coerced him into pleading guilty. *See generally Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Moreover, unlike the plea hearing in *Blackledge*, which was exceedingly perfunctory, *cf.* 431 U.S. at 76–79, 97 S.Ct. at 1630–82, the hearing here involved considerable questioning of Worthen as to the voluntariness of his plea. Given all of these circumstances, we do not believe that Worthen has overcome the formidable barrier of his own statements on the record that his guilty plea was truly voluntary. We thus find no reason to look beyond the record of Worthen's plea hearing.

AFFIRMED.

## APPENDIX

The thirty-eight grounds for relief asserted in both the state post-conviction application and the instant habeas petition fall into two groups. The first is comprised of the following grounds, which have been argued at length by the parties and were directly addressed by the district court:

1. Involuntary plea.
2. Ineffective assistance of counsel.
3. Prosecution's withholding of exculpatory evidence and the trial court's denial of due process in failing to grant petitioner's motions for discovery and continuance.
4. Illegal arrest and interrogation.

We address claims 1. and 2. in this opinion.

The second group consists simply of a list of conclusory claims that, to the extent they are not already incorporated in the four grounds cited above, have not been adequately developed by factual allegation or legal argument:

5. The possibility that the statute and/or the information were unconstitutional or incomplete.
6. The failure to give petitioner his Miranda warning before he was arrested.
7. Improper waiver of rights at all stages of the proceedings or arrest.
8. Improper use of evidence taken involuntarily.
9. Denial of the right to a speedy trial by postponing the preliminary hearing four times.
10. Adverse prejudicial pretrial publicity.
11. Denial of the right to counsel by counsel's total disinterest in this case.
12. Ineffective assistance of counsel.
13. Denial of the right to be present at all stages of the proceedings.
14. Prosecution's use of false testimony.
15. State's withholding of favorable evidence.
16. Court's failure to inform defendant properly during sentencing.
17. Petitioner was persuaded to plead guilty by promises which have not been kept.
18. Petitioner was persuaded to plead guilty by threats of death and other charges pending.
19. Petitioner did not enter guilty plea knowingly and voluntarily.
20. Court's failure to fix degree of the offense.
21. Defense counsel's failure to inform defendant of any procedures to follow in appeal or any other stage of the proceedings correctly.

**1186**

22. The existence of newly discovered evidence in this case.
23. District attorney's untimely and prejudicial filing of Bill of Particulars.
24. Defense counsel's untimely and prejudicial manner of filing motions.
25. Use of hearsay testimony of Det. Harrison at the preliminary.
26. Evidentiary harpoons from Det. Harrison as to other crimes.
27. Violation of the plea agreement by defense counsel and the State.
28. Multiple conflicts of interest on the part of defense counsel and the State.
29. Court's admission of pre-posed photos.
30. Illegal arrest of this petitioner.
31. Possible use of hypnotic suggestion to obtain alleged statement.
32. Failure to disclose the agreement the State made with informer Groshon.
33. Violation of this petitioner's rights by the Oklahoma City Police in conducting further interrogation after this petitioner asked for an attorney.
34. Failure to supply true and correct records in this case. 21 O.S. 701.13.
35. Trial court's failure to inform petitioner of his mandatory forty-eight hours, and receipt of defendant's waiver before judgment was entered. 22 O.S. 961, 962.
36. Trial court's failure to address this petitioner personally in accepting his plea.
37. State court's failure to provide counsel in petitioner's first appeal via post-conviction application denying petitioner of his 6th and 14th Amendment rights, when asked for by motion.
38. Petitioner is an uneducated layman to the matters of law and would ask the court to consider all pleadings, asnwers and applications, etc., that have been filed in connection with this case in a liberal manner and

also consider appointment of counsel to this petitioner.